Albert J. Kissling v. Commissioner. Albert J. Kissling and Viola O. Kissling v. Commissioner.
Kissling v. Commissioner
Docket Nos. 44569, 44570.
United States Tax Court
T.C. Memo 1954-66; 1954 Tax Ct. Memo LEXIS 179; 13 T.C.M. (CCH) 537; T.C.M. (RIA) 54172; June 15, 1954, Filed *179 James P. Hill, Esq., 412 Atlantic Bank Building, Jacksonville, Fla., and William R. Frazier, Esq., for the petitioners. A. F. Barone, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income taxes against petitioners in these consolidated cases as follows: Docket No.
Year
Deficiency
44569
1947
$224.27
44570
1949
156.88
Some of the adjustments are uncontested. The sole issue before the Court is whether sums paid to petitioner, Albert J. Kissling, during each year in controversy as a cash allowance by the Riverside Presbyterian Church in lieu of a manse are excludable from his gross income under the provisions of section 22(b)(6) of the Internal Revenue Code. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife residing in Jacksonville, Florida. Albert J. Kissing, hereinafter referred to as petitioner, filed his income tax return individually for the year 1947 and jointly with his wife, Viola O. Kissling, for the year 1949 with the collector for the district of Florida. During *180 the tax years in controversy, petitioner was a duly ordained minister and pastor of the Riverside Presbyterian Church in Jacksonville, Florida, hereinafter referred to as the Church. Petitioner became pastor of the Church during October 1932, and at the time of the hearing was still employed in that capacity. When petitioner was first called to the service of the Church, he was paid a salary of $300 per month and was furnished a home or manse owned by the Church. At the time petitioner moved into the manse his family consisted of his wife, two children and himself. By 1939 four more children had been added to petitioner's family. Because of the increase in the size of petitioner's family, the manse became inadequate to meet his needs. Some time during the year 1938 petitioner informed the Church authorities that he was going to vacate the manse for one more suited to his particular need. A committee of the Church filed a written report dated July 20, 1938, stating: "We, the Committee on the Manse question have met in several sessions and beg to make the following report adopted by us unanimously: "The old idea of owning and maintaining a Manse by a City church of our size *181 to suit the needs of any and every minister and his family is a thing almost impossible to accomplish properly. "Our present Manse is in a good location and this accounts for much of its present value however we bought it in 1924 for $13,162.50. "Taking into account the following: Depreciation, at least,
$ 5,000.00
Interest on present value
$6500.00 14 years at 6%
5,460.
Maintenance and repairs,
Insurance, etc. minimum
2,500.
Total cost for 14 years.
$12,960.
or Cost per year over
925.
or Cost per month over
75.
"The present condition of the property is only fair - wood timbers and flooring need replacing, further painting is need, floors need refinishing, the heating plant, baths, kitchen - all need much attention to put in condition for a home such as our minister should have. "The question is: Why should a City church have a burden to continually care for, when each pastor's family requirements are so different? "According to appraisers the property is worth from $6500 to $8500 with a present mortgage of $2475. It could be rented at from $50 to $60 yet repairs to the extent of $500 to $1500 would have to be made in order to maintain the property. *182 "Then why not remove the burden and sell at a fair price of say $8,000; if we can, and put about $5,000 to reduce our indebtedness and allow our present minister $75 per month for rent. When and if another comes, set the salary to cover the total. "We therefore recommend that this matter be handled slowly and cautiously for the best interests of the church without special thought of our present minister (who urges against a sacrifice of the present Manse) - that the Board of Deacons pass on this matter then report their action to the Session with recommendations. "This Committee feels the disposition of the property at a price of $8,000 and placing the net amount on our indebtedness would be good judgment [judgement]. "Should we be unable to sell the property at a fair price and our present minister insists on vacating the premises this Fall for one more suited to his particular needs, we suggest a new Committee be appointed to work out a satisfactory solution of rental exchange. "Our present minister to be advised in advance of all contemplated plans, and our desire to make his home satisfactory in so far as our finances will permit." * * *
In October 1940 petitioner *183 found a suitable house located at 1415 Windsor Place, Jacksonville, Florida, which was being offered for sale. Petitioner purchased this property in October of 1940 at a total price of $11,500, payable $1,150 down and the balance by a purchase money mortgage payable in monthly installments covering a 15-year period. The house that petitioner purchased and occupied during the periods in controversy consists of a two-story brick dwelling, with a double garage and apartment in the rear. The garage apartment was of frame construction and was added by petitioner in 1945. The minutes of the Board of Deacons of the Church dated October 24, 1940 reflect the following action taken by the board in connection with the manse question. "The meeting was opened with the Lord's Prayer, after which the chairman spoke on the purpose of the called meeting, stating that the problem of the present manse not being suitable, comfortable or adequate for the use of our minister had again come up for consideration due to the fact that Mr. Kissling had located a place which would come much closer to filling his needs. "The board had a very full and open discussion of this situation, taking into consideration *184 the report of some two years ago of a committee which made a study of this question at that time, part of which report gave the information that the present manse, from the time of its purchase to the date of that report, taking into consideration upkeep and depreciation and other expenses [expense], had cost the church an average of $75.00 per month. "It was the opinion of the board that the owning of a manse by our church was a mistake for many reasons, and that it would be a wise thing to dispose of the manse property as soom [soom] as practical, making the pastor of the church a monthly allowance to be applied by him toward the expense of obtaining living accomodations [accommodations] suitable for his family. It would then be the responsibility of the present and future pastors to provide for themselves and families, by rental or purchase, the type and size manse best suited to their individual needs, and the expense to the church would be fixed by the amount of the allowance set up from year to year in the budget. "Mr. Hazard moved, and it was duly seconded and carried, that the budget for the current year be recast to allow payment to the present minister a monthly *185 rental allowance of $75.00 per month, effective with the date he moves from the present manse and ending with the close of the church year, March 31, 1941." The action taken by the Board of Deacons was approved by the Session of Riverside Presbyterian Church on December 2, 1940; and the minutes of that meeting reflect this action as follows: "Mr. Jenks made the following report with reference to the manse: "Read the report of a committee of 1938 appointed for the consideration of (1) The desireability [desirability] of maintaining a manse and (2) recommend that the manse be disposed of as an opportunity arises and (3) a corresponding amount equal to the present cost of maintaining such a manse be included in the budget as a manse allowance. "The Deacons have at present set an amount of $75.00 a month in their budget and such a transfer would not add to current expenses." A member of the Church was opposed to the sale of the Church manse. In a letter dated December 2, 1940 he stated his opinion that in the best interest of the Church the manse should be rented and the difference between the rent collected and the expense of maintaining the manse should be paid as an allowance *186 to the petitioner to whatever advantage he may select or determine. If the Church was going to pay as much as $75 a month as an allowance, and if a change to a larger manse was absolutely necessary, he favored a purchase of the larger manse by the Church itself. Petitioner would have found such an alternative arrangement completely satisfactory. The fair rental value of the property located at 1415 Windsor Place, Jacksonville, Florida during the years 1947 and 1949 was approximately $150 per month. The annual rate of physical depreciation on residential property of the type here in question is not less than 2 per cent. At the time petitioner purchased the property known as 1415 Windsor Place in October 1940, the lot, apart from the improvements thereon, was worth approximately $3,000. During the year 1947, petitioner received net income from the temporary rental of a room within the manse proper in the amount of $57, which he reported on his tax returns for that year. Petitioner received $777 and $685.45 during the years 1947 and 1949, respectively, as gross income from the rental of the garage apartment. These amounts were reported as income on his tax returns for those *187 years. During the years in controversy, petitioner incurred expenses in connection with the manse (apart from those incurred in connection with the temporary rental of a room in 1947) and the garage apartment as follows: Expenses of Manse Upkeep
Expenses of Garage Apartment
1947
1949
1947
1949
Taxes
* $ 270.02
* $ 333.98
Interest
* 341.32
* 297.70
Insurance
30.00
68.60
* $ 13.50
Depreciation
170.00
170.00
* 96.50
* $96.50
Repairs, Upkeep
228.68
322.30
* 42.25
Mortgage Principal
641.32
766.61
Totals
$1,681.34
$1,959.19
$152.25
$96.50 In addition, other expenses were incurred such as for heat and electricity. During each of the years 1947 and 1949 the Church paid petitioner the sum of $900 as a housing allowance in addition to his regular salary. The Church, in estimating its annual budget, makes separate provisions for petitioner's regular salary and his housing allowance. This is also true with respect to others in the Church staff receiving salaries and allowances. Other than the monthly housing allowance paid petitioner by the Church, it expends no other *188 sums for the maintenance, upkeep, carrying charges or utilities in connection with the manse. The manse in question is used for official Church functions to the same extent as if the Church owned the property. Opinion This proceeding is not distinguishable in principle from Gideon B. Williamson, 22 T.C. No. 72, decided this day. On the authority of that case, Decisions will be entered for the respondent. Footnotes
*. Deducted on petitioner's tax returns.↩